# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE BRADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-1381-NJR-DGW |
| | ) |
| NURSE LORI, NURSE SROKA, LT. WEBB, C/O MACALAHAN, LT. KOSMA, NURSE KIM, LT. WRANGLER, JANE DOE C/O, NURSE TERA, NURSE READER, WARDEN OF PINCKNEYVILLE CORRECTIONAL CENTER, and ILLINOIS DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This case is before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson regarding Plaintiff Deandre Bradley's Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6). After considering the evidence, the Court modifies the Report and Recommendation as set forth below.

## BACKGROUND

Bradley, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Pinckneyville Correctional Center, is paralyzed in his right leg and cannot walk. As a result, he is wheelchair bound and requires a catheter, urinary bag, and disposable briefs (Doc. 1, p. 6). Bradley's skin is severely irritated by adhesive materials, which causes him blisters, sores, and skin loss (*Id.*). These conditions also require Bradley to use pressure reduction devices such as wheelchair cushions and an air or egg crate mattress (*Id.*, p. 7).

Among many other things, Bradley's Complaint alleges that his cellmate stabbed him in the head and bit his pinky finger on June 24, 2018 (Doc. 1). Bradley claims he went on crisis watch in order to get away from his cellmate (*Id.*). While on crisis watch, Bradley was told he would get his egg crate mattress, but instead only got a large rectangular plastic object to lay on (Doc. 1-1, p. 9). He told Nurse Kim he needed his egg crate mattress, or he could possibly wake up with bed sores (*Id.*). She told him he should not have gone on crisis watch (*Id.*, p. 10). Despite spending as much time as possible in his wheelchair, the next evening Bradley felt burning on his left buttocks and leg and saw several pressure sores (*Id.*).

Bradley claims he sought medical attention for his head and pinky finger injuries from Nurse Kim (*Id.*, p. 9). When Bradley told Nurse Kim his head was numb where he was stabbed and he couldn't feel his pinky or ring fingers, she allegedly told Bradley to put water on the injuries and they would be fine (*Id.*). Bradley alleges that despite written and verbal requests, the nursing staff has refused to treat his pressure sores, head injury, or hand injury (*Id.*, p. 16).

Along with his Complaint, Bradley filed a motion for temporary restraining order and preliminary injunction (Doc. 2). After preliminary review of his Complaint pursuant to 28 U.S.C. § 1915A, Bradley's motion for temporary restraining order was denied without prejudice, while his motion for preliminary injunction was referred to Magistrate Judge Wilkerson for consideration (Doc. 4). Bradley then amended his motion for temporary restraining order and preliminary injunction (Doc. 6), and Magistrate Judge Wilkerson found Bradley was entitled a hearing on his claims of an untreated bed sore and numbness in his head and hand (Doc. 7).

At the hearing on July 27, 2018, Bradley testified that when he entered crisis watch in the Healthcare Unit, he was told he would receive everything medically necessary,

including his egg crate and pressure reduction devices, but the first night there he was given no mattress at all (Doc. 21, p. 7). As a result, Bradley developed a bed sore on his left hip (*Id.*). The next day, Bradley alerted a nurse to his bed sore, and he was told the sore would be noted in his file so Bradley could be examined the next day[1] (*Id.*, p. 9). Bradley was given a crisis mattress that second night, but he never got his egg crate mattress back until he was taken off crisis watch around July 3, 2018 (*Id.*, pp. 7-8). He testified that he never received treatment for his bed sore despite complaining every night to the nurses that give him his medication (*Id.*, pp. 8-10). During his testimony, Bradley showed the wound to Magistrate Judge Wilkerson, who noted for the record there was quite a bit of discharge on the dressing (*Id.*, p. 16).

Bradley also testified about his head and hand injuries, noting that he lied to the health care staff about his head wound and said he fell out of his wheelchair (*Id.*, p. 13). Bradley stated the nurse told him just to put water on his injuries, even when he told her his head was numb (*Id.*). Bradley then told Magistrate Judge Wilkerson that the numbness has gotten worse, he is sometimes dizzy and has fallen twice since the incident, and he has bad headaches (*Id.*, p. 14). Bradley testified he complains about these issues every day, but nothing is done (*Id.*). He did, however, testify that an x-ray has been taken of his hands (*Id.*).

Magistrate Judge Wilkerson entered a Report and Recommendation that same day recommending that this Court grant in part Bradley's motion for temporary restraining order and order the IDOC to arrange for Bradley to be evaluated by an outside medical professional and treated as medically necessary for his bed sore and numbness on his head. In coming to his recommendation, Magistrate Judge Wilkerson concluded that Bradley had

---

[1] An entry in Bradley's medical records shows he was seen the following day, but there is no reference to a bed sore or hip ulcer.

a likelihood of success on the merits of his deliberate indifference claim when he suffered from an objectively serious medical condition,[2] and his complaints were being ignored. Next, Magistrate Judge Wilkerson found that Bradley had no adequate remedy at law and faced irreparable harm when his bed sore was potentially life threatening and his headaches, numbness, and dizziness could be indicative of a more serious medical condition. Finally, Magistrate Judge Wilkerson found that there would be significant harm to Bradley if his injuries were not addressed, while there would be no significant burden on the State since it is obligated to provide medical services to inmates in its care.

On July 30, Defendant IDOC objected to the entry of a temporary restraining order (Doc. 17).[3] The IDOC argued that Bradley's medical records are void of any reference to a head injury related to his cellmate stabbing him. Instead, the only recent head injury resulted from a fall on July 16, 2018, in which Bradley sustained a superficial injury that required no further treatment. Bradley was provided immediate medical care when he reported this injury, and the staff determined no further treatment was necessary. If they were incorrect as to the extent of Bradley's injuries, this would amount to negligence, not deliberate indifference, because Bradley has made no further complaints about his condition. The IDOC also argued that Bradley had already been referred to an outside medical provider for surgery on his bed sore on August 1, 2018; thus, there is no need to enter a TRO when medical care has already been arranged.

Along with its objection, the IDOC provided a handful of Bradley's medical records

---

[2] Magistrate Judge Wilkerson concluded Bradley had an objectively serious medical condition because he is wheelchair bound and cannot walk. The proper analysis, however, is whether Bradley's bed sore and head numbness after being stabbed are serious medical conditions—not his paralysis. The Court finds that they are; thus, this hiccup in the analysis does not affect the outcome in this instance.

[3] In light of the subject matter of Magistrate Judge Wilkerson's Report and Recommendation, the Court shortened the time for objections (*see* Doc. 15) and emailed copies of the Report and Recommendation to the Illinois Attorney General's Office.

related to the examination of his head on July 16. Per this Court's Order, the IDOC also submitted a follow-up status report and medical records from Bradley's surgery for the Court to review *in camera* (Doc. 26).

The medical records reveal that Bradley indeed had surgery—but not on the bed sore at issue here. Rather, he had surgery to remove foreign objects from his right lower leg and left upper thigh. Nevertheless, his discharge instructions include a daily dressing change to his bed sore, referred to as a hip ulcer, which involves rinsing it with saline, drying it, packing it with gauze, and covering it with a non-adhesive dressing. He also was prescribed Bactrim and Tylenol #3. Additionally, there is an order on his Medication Administration Record indicating that, from June 24, 2018 to August 24, 2018, Bradley was to receive a daily application of triple antibiotic ointment for his ulcer.

## LEGAL STANDARD

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). If no objection is made, the Court reviews the Report and Recommendation only for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). In reviewing the Report and Recommendation, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A temporary restraining order ("TRO") is an order issued without notice to the party

to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

## DISCUSSION

In this case, there is conflicting evidence as to the treatment Bradley received for his bed sore. While Bradley avers he never received any treatment, the medical records indicate he was to be receiving triple antibiotic ointment daily beginning June 24, 2018—the night he went to crisis watch. In any event, Bradley's post-surgery treatment instructions include daily dressing changes for his hip ulcer, so there is no longer a risk of immediate and irreparable harm. Accordingly, Bradley's request for a TRO with regard to his bed sore is moot. Of course, he may refile a motion with the Court should this prescribed treatment fail to materialize.

As for his head injury, while the Court is concerned with Bradley's reported symptoms of numbness, headaches, and dizziness, it is not convinced that immediate and irreparable injury will occur if the Court orders treatment prior to Defendants being heard in opposition. The Court notes there is some discrepancy in the timing of Bradley's injury, as he says he was stabbed above his left ear on June 24, but his medical records indicate he reported a fall on July 16 in which he sustained a superficial cut to his left temple (and Bradley did testify that he lied and said his injury was the result of a fall rather than being stabbed). Further, there is no record of Bradley complaining of these additional symptoms when he was examined for his head injury. Although a TRO is not warranted here,

preliminary injunctive relief may still be available once Defendants are served and have an opportunity to respond.

## Conclusion

For these reasons, the Court **MODIFIES** the Report and Recommendation. Plaintiff Deandre Bradley's motion for temporary restraining order is **DENIED as moot and without prejudice** with regard to his bed sore/hip ulcer. If Bradley does not receive the care prescribed in his medical records, however, including daily dressing changes, he may refile his motion. The Court further **DENIES** Bradley's motion for temporary restraining order with regard to his head injury; however, his motion for preliminary injunction as to this injury shall proceed to Magistrate Judge Wilkerson for further review once Defendants have appeared in the action.

**IT IS SO ORDERED.**

DATED:   August 7, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**